IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AHMED DOE, *et al.*, ) | |
| ) | |
| Petitioners, ) | |
| ) | |
| v. ) | Civil Action No. 05-CV-1458 (ESH) (LFO) |
| ) | |
| GEORGE W. BUSH, ) | |
| President of the United States, ) | |
| *et al.,* ) | |
| ) | |
| Respondents. ) | |
| ) | |
| NABIL (Last Name Unknown), *et al.*, ) | |
| ) | |
| Petitioners, ) | |
| ) | |
| v. ) | Civil Action No. 05-CV-1504 (RMC) (LFO) |
| ) | |
| GEORGE W. BUSH, ) | |
| President of the United States, ) | |
| *et al.,* ) | |
| ) | |
| Respondents. ) | |
| ) | |
| ABBAR SUFIAN AL HAWARY, *et al.*, ) | |
| ) | |
| Petitioners, ) | |
| ) | |
| v. ) | Civil Action No. 05-CV-1505 (RMC) (LFO) |
| ) | |
| GEORGE W. BUSH, ) | |
| President of the United States, ) | |
| *et al.,* ) | |
| ) | |
| Respondents. ) | |

|  |  |  |
|---|---|---|
| SHAFIIQ (Last Name Unknown), *et al.*, | ) | |
| | ) | |
| Petitioners, | ) | |
| | ) | |
| v. | ) | Civil Action No. 05-CV-1506 (RMC) (LFO) |
| | ) | |
| GEORGE W. BUSH, | ) | |
| President of the United States, | ) | |
| *et al.,* | ) | |
| | ) | |
| Respondents. | ) | |

|  |  |  |
|---|---|---|
| HAMID AL RAZAK, *et al.*, | ) | |
| | ) | |
| Petitioners, | ) | |
| | ) | |
| v. | ) | Civil Action No. 05-CV-1601 (GK) (LFO) |
| | ) | |
| GEORGE W. BUSH, | ) | |
| President of the United States, | ) | |
| *et al.,* | ) | |
| | ) | |
| Respondents. | ) | |

|  |  |  |
|---|---|---|
| USAMA HASAN ABU KABIR, *et al.*, | ) | |
| | ) | |
| Petitioners, | ) | |
| | ) | |
| v. | ) | Civil Action No. 05-CV-1704 (JR) (LFO) |
| | ) | |
| GEORGE W. BUSH, | ) | |
| President of the United States, | ) | |
| *et al.,* | ) | |
| | ) | |
| Respondents. | ) | |

|  |  |
|---|---|
| MUHAMMED QASIM, *et al.*,<br><br>              Petitioners,<br><br>      v.<br><br>GEORGE W. BUSH,<br>      President of the United States,<br>      *et al.,*<br><br>          Respondents. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)    Civil Action No. 05-CV-1779 (JDB) (LFO) |

### RESPONDENTS' OBJECTIONS TO MAGISTRATE JUDGE'S
### OCTOBER 6, 2006 REPORT AND RECOMMENDATION

Respondents hereby object to Magistrate Judge Alan Kay's October 6, 2006 Report and

Recommendation ("Report and Recommendation") recommending that Judge Oberdorfer

discharge petitioners' obligations to show cause why the above-captioned cases should not be

dismissed for lack of proper next friend standing, and instead deny respondents' motion for order

to show cause without prejudice to renew if any counsel for petitioners fails to provide evidence

of authority to represent a detainee within ten days of counsel's second visit with that detainee.

As an initial matter, respondents concede that the issue of proper next friend standing is

moot as to petitioners in <u>Nabil v. Bush</u>, No. 05-CV-1504 (RMC), <u>Al Hawary v. Bush</u>, No. 05-

CV-1505 (RMC), and <u>Qasim v. Bush</u>, No. 05-CV-1779 (JDB), given that counsel for petitioners

have provided respondents with authorizations of representation signed by the detainees on

whose behalf habeas relief is sought in those cases.  Respondents' challenge to next friend

standing continues to be live in the remaining cases, however.  Indeed, respondents' challenge

remains especially pertinent given that counsel in two of the other cases have had direct access to

counsel of some nature, yet no direct authorization of representation has been provided. Counsel in Kabir v. Bush, No. 05-CV-1704 (JR), has made an initial visit to the petitioners in that case but has not yet provided signed authorizations of representation to respondents.[1] Further, petitioner Shafiiq in Shafiiq v. Bush, No. 05-CV-1506 (RMC) was charged with offenses triable by military commission under the procedures that were in effect prior to the Supreme Court's decision in Hamdan v. Rumsfeld, 548 U.S. —, 126 S. Ct. 2749 (U.S. June 29, 2006), and was provided access to defense counsel as part of those procedures. Respondents have not been provided with an authorization of representation signed by petitioner Shafiiq, however. Counsel should be required in these circumstances to explain why no direct authorization from the detainee cannot be provided.

Finally, respondents note that, as of this date, they have been unable to identify petitioner Ahmed Doe in Ahmed Doe v. Bush, No. 05-CV-1458 (ESH), as a detainee at Guantanamo Bay. Thus, not only is respondents' challenge to next friend standing appropriate, the Magistrate Judge's Report and Recommendation, which contemplates direct counsel access to the alleged detainee on behalf of whom the Ahmed Doe case was brought, is inappropriate and, in fact, makes no sense.

As explained below, the Report and Recommendation should be rejected for several generally applicable reasons, as well. First of all, the Detainee Treatment Act of 2005 creates an exclusive review mechanism in the D.C. Circuit to address the validity of the detention of aliens

---

[1] Respondents provided counsel access to petitioners in this case pursuant to Magistrate Judge Kay's May 11, 2006 Memorandum Order granting counsel's motion for access to petitioners. See Kabir v. Bush, No. 05-CV-1704 (JR) (LFO) (AK) (Memorandum Order dated May 11, 2006) (dkt. no. 33), recons. denied, Order dated August 25, 2006 (dkt. no. 48).

detained as enemy combatants at Guantanamo Bay, including such individuals who are subject to

the Report and Recommendation in the above-captioned cases.  Moreover, the Military

Commissions Act of 2006, amends 28 U.S.C. § 2241 to eliminate altogether district court

jurisdiction to consider habeas petitions, as well as other actions filed on behalf of aliens detained

by the United States as enemy combatants, and is expressly applicable to pending cases,

including the above-captioned such cases.  Therefore, the Magistrate Judge had no jurisdictional

basis to recommend any relief in these cases, and no jurisdictional basis for the recommended

relief currently exists, in any event.

  In addition, the Magistrate Judge clearly erred in concluding that the governing protective

order and counsel access procedures in the Guantanamo habeas litigation do not require counsel

to supply proof of authority to represent a detainee prior to being permitted privileged access to

the detainee.  To the contrary, the language, structure, and history of the counsel access

procedures evidence a two-layer requirement regarding counsel's authority to bring and then

maintain a habeas petition on behalf of a Guantanamo detainee.  First, in cases such as these

brought by a putative "next friend," prior to having privileged access to the detainee, counsel

must produce sufficient evidence of counsel's authority to represent the detainee through a

proper "next friend."  Second, after having the opportunity to meet with the detainee, counsel

must submit evidence of the detainee's authorization for counsel to represent him.  The

Magistrate Judge clearly erred by conflating these separate, and practical, authorization

requirements into a single requirement that counsel who purportedly represents a particular

detainee must be provided with privileged access to the detainee on demand and then need only

produce evidence of authority to represent the detainee after conducting privileged meetings with

the detainee.  In reaching this conclusion, the Magistrate Judge created an extra-legal scheme for

establishing jurisdiction in the Guantanamo habeas cases that is contrary to law, including the

plain terms of the habeas statute and the well-established jurisprudence regarding next friend

standing.  Further, by recommending that the government provide direct, privileged access to

wartime detainees in a military detention facility for counsel merely purporting to represent a

detainee, without any showing by counsel of proof of appropriate authority to represent the

detainee directly or through a next friend satisfying appropriate standing requirements, the

Magistrate Judge's Report and Recommendation offends separation of powers.

For these reasons, as more fully explained below, respondents object to the Magistrate

Judge's Report and Recommendation and request that it be rejected by this Court.

## BACKGROUND

The above-captioned petitions for writ of habeas corpus were filed by counsel on behalf

of individuals alleged to be detained at Guantanamo Bay, through other detainees purporting to

act as next friends on behalf of the named petitioners.  These cases were part of scores of habeas

petitions on behalf of Guantanamo detainees pending at the time of filing, and some of more than

200 currently pending, generally all of which have been stayed, formally or otherwise, pending a

ruling from the D.C. Circuit Court of Appeals in related appeals before it, including regarding the

effect of the Detainee Treatment Act of 2005 and the Military Commissions Act of 2006 on the

jurisdiction of the district court over these cases.

In each of the above-captioned cases except Shafiiq v. Bush, the Court, as was routine at

the time in all of the Guantanamo detainee cases pending before it, entered in these cases the

Protective Order entered in other Guantanamo detainee cases pending before other Judges of this

Court.  See In re Guantanamo Detainee Cases, 344 F. Supp. 2d 174 (D.D.C. Nov. 8, 2004)

("Protective Order"); Order Supplementing and Amending Filing Procedures Contained in

November 8, 2004 Amended Protective Order in In re Guantanamo Detainee Cases, No. 02-CV-

0299, et al. (D.D.C. Dec. 13, 2004); Order Addressing Designation Procedures for "Protected

Information" in In re Guantanamo Detainee Cases, No. 02-CV-0299, et al. (D.D.C. Nov. 10,

2004).  The first two paragraphs of the Protective Order set forth its premises, function, and

scope:

> 1.      This case likely involves classified national security
> information or documents, the storage, handling and control of
> which require special security precautions, and access to which
> requires a security clearance and a "need to know."  This case may
> also involve other protected information or documents, the storage,
> handling and control of which may require special precautions in
> order to protect the security of United States government personnel
> and facilities, and other significant government interests.
>
> 2.      The purpose of this Protective Order is to establish the
> procedures that must be followed by all petitioners' counsel, their
> respective petitioner(s), all other counsel involved in this case,
> translators for the parties, and all other individuals who receive
> access to classified national security information or documents, or
> other protected information or documents, in connection with this
> case, including the privilege team as defined in Exhibit A.

Id., ¶¶ 1, 2.

To serve this overarching function of "prevent[ing] the unauthorized disclosure or

dissemination of classified national security information and other protected information," id. at

1, the Protective Order further provides that "*Petitioners' counsel* are bound by the terms and

conditions set forth in the 'Revised Procedures for Counsel Access to Detainees At the U.S.

Naval Base in Guantanamo Bay, Cuba,' and the procedures for handling mail and documents

brought into and out of counsel meetings, attached hereto as Exhibit A."  Id., ¶ 6 (emphasis

added).  Moreover, "[t]his Protective Order specifically incorporates by reference all terms and conditions established in the procedures contained in Exhibit A *to the extent they place limitations on petitioners' counsel in their access to and interaction with petitioners or handling of information*."  Id. (emphasis added).

The Revised Procedures for Counsel Access to Detainees at the U.S. Naval Base in Guantanamo Bay, Cuba, annexed to the Protective Order as Exhibit A, in turn, set certain terms, conditions, and limitations for habeas counsel's access to properly represented detainees and sets out procedures and requirements for the handling of information obtained from and delivered to detainees.  For example, it requires that visiting counsel obtain a security clearance, see id., Ex. A, § III.A, and must sign an affirmation acknowledging his or her agreement to comply with the counsel access procedures.  See id., Ex. A, § III.B.  Further, it provides that "[p]rior to being permitted access to the detainee," counsel must "provide evidence of his or her authority to represent the detainee."  Id., Ex. A, § III.C.1.  In other Guantanamo detainee cases, this evidence has typically taken the form of letters from detainees directly authorizing a challenge to their detention, or affidavits and authorizations of "next friends" who have filed petitions on behalf of detainees.  In a proper "next friend" case, because the detainee "remains the real party in interest," see Whitmore v. Arkansas, 495 U.S. 149, 163 (1990), the access procedures further require a second, subsequent type of authorization, directly from the detainee, once counsel in a proper next friend case is provided access to the detainee.[2]  See Protective Order, Ex. A,

_____

    [2]  This two-layer requirement regarding counsel's authority to bring and then maintain the lawsuit was appropriately established in light of the fact that the Guantanamo habeas cases pending at the time the access procedures were negotiated and established were uniformly "next friend" cases.

§ III.C.2. (counsel must "provide evidence of his or her authority to represent the detainee as soon as practicable and in any event no later than ten (10) days after the conclusion of a second visit with a detainee").

Respondents in these cases reviewed the submissions from the purported "next friends" in these cases and filed motions for an order to show cause why the cases should not be dismissed for lack of a showing that the putative "next friend" satisfied standing requirements articulated by the Supreme Court in Whitmore v. Arkansas, 495 U.S. 149 (1990).  See Whitmore, 495 U.S. at 163 ("'[N]ext friend' standing is by no means granted automatically to whomever seeks to pursue an action on behalf of another.").  As explained in the motions, a purported next friend must satisfy the "two firmly rooted prerequisites" articulated by the Supreme Court in Whitmore: (1) he must demonstrate that the detainee on whose behalf he claims to file a petition for writ of habeas corpus cannot challenge the legality of his detention himself; and (2) he must have a significant relationship with this detainee in order to demonstrate that he is truly dedicated to this detainee's best interests.  Id. at 163-64.  Absent such a showing, court jurisdiction over a petition is lacking, and the case must be dismissed.  See, e.g. Resps' Mot. for Order to Show Cause Why Case Should Not Be Dismissed for Lack of Proper "Next Friend" Standing in Ahmed Doe v. Bush (dkt. no. 2).  In addition to noting the absence of the requisite showing in these cases, the motion further explained the various avenues available to detainees such as petitioners in these cases for directly accessing the Court or initiating a challenge to the legality of their detention themselves.

Respondents' motions for order to show cause in these cases were subsequently transferred by the Judges presiding over the cases to Judge Oberdorfer for decision pursuant to

- 7 -

Local Civil Rule 40.6(a).  See, e.g., Ahmed Doe (dkt. no. 8).  On November 4, 2005, Judge

Oberdorfer granted respondents' motions for order to show cause, citing the Supreme Court's

Whitmore requirements for next friend standing.  See November 4, 2005 Order in Ahmed Doe

(dkt. no. 10).  Judge Oberdorfer ordered additional briefing, scheduled a hearing for December 5,

2005, and further ordered:

> that Petitioners and Respondents consult with Magistrate Judge Kay as soon as is
> practicable (but in any event before the hearing) to discuss how counsel for
> Petitioners may obtain access to the detainees who allegedly seek to be
> represented by next friends to determine if the detainees will authorize counsel to
> represent them directly.

See id. at 5.[3]  After consultation with Magistrate Judge Kay pursuant to Judge Oberdorfer's

directive, the parties agreed that counsel for petitioners would endeavor to establish adequate

next friend standing in these cases, and the December 5, 2005 hearing was continued pending

these additional efforts by counsel.  See, e.g., Ahmed Doe v. Bush, No. 05-CV-1458 (ESH) (dkt.

nos. 10, 16).  The parties consulted with Magistrate Judge Kay on several occasions over the

following months regarding this issue.  Although counsel for petitioners attempted to satisfy the

Whitmore requirements for next friend standing in certain of the above-captioned cases by

seeking additional information from the purported "next friends," their supplemental submissions

failed to meet the Whitmore requirements in respondents' view.

On December 30, 2005, the Detainee Treatment Act of 2005, Pub. L. No. 109-148, tit. X,

119 Stat. 2680 ("the DTA"), became law.  The DTA, among other things, created an exclusive

---

[3]  Respondents filed a motion for clarification, or in the alternative, reconsideration, of
Judge Oberdorfer's directive requiring the parties to consult with Magistrate Judge Kay regarding
how counsel may obtain access to the detainees.  See, e.g., Ahmed Doe (dkt. no. 11).  Judge
Oberdorfer denied respondents' motion.  See, e.g., id. (Minute Order dated November 17, 2005).

review mechanism in the D.C. Circuit, applicable to pending cases, to address the validity of the detention of such aliens held as enemy combatants.  Id. § 1005(e)(1), (h)(2).  Moreover, on October 17, 2006, the Military Commissions Act of 2006, Pub. L. No. 109-366 (2006) ("the MCA"), became law.  The MCA, among other things, amends 28 U.S.C. § 2241 to eliminate altogether district court jurisdiction to consider habeas petitions, as well as any other action "relating to any aspect of the detention, transfer, treatment, trial, or conditions of confinement," of aliens detained by the United States as enemy combatants.  See id. § 7.  The MCA expressly applies the amendment "to all cases, without exception, pending on or after the date of the enactment of this Act," which would include such above-captioned cases, thereby unambiguously divesting this Court of jurisdiction over these actions.[4]

On October 6, 2006, Magistrate Judge Kay issued a Report and Recommendation in response to Judge Oberdorfer's directive regarding "how counsel for Petitioners may obtain access to the detainees who allegedly seek to be represented by next friends to determine if the detainees will authorize counsel to represent them directly."  In support of his recommendation that Judge Oberdorfer discharge petitioners' obligations to show cause why the above-captioned cases should not be dismissed for lack of proper next friend standing, and instead deny respondents' motion for order to show cause without prejudice to renew if any counsel for petitioners fails to provide evidence of authority to represent a detainee within ten days of counsel's second visit with that detainee, the Magistrate Judge relied on his March 21, 2006

---

[4]  The effect of the DTA on cases such as these, i.e., the extent to which the vesting of exclusive review in the Court of Appeals deprives this Court of jurisdiction to proceed, remains pending before the Court of Appeals.  The D.C. Circuit also recently ordered supplemental briefing on the effect of the MCA on the pending appeals, to be completed by November 20, 2006.

decision in another Guantanamo detainee case, Adem v. Bush, 425 F. Supp. 2d 7 (D.D.C. 2006), recons. denied, 2006 WL 1193853 (D.D.C. Apr. 28, 2006). In his decision in the Adem case, as well as in a number of subsequent decisions involving a similar issue,[5] the Magistrate Judge construed the Access Procedures applicable in the Guantanamo habeas cases not to require counsel to supply any proof of authority to represent a detainee prior to being permitted privileged access to the detainee.

In explaining the rationale and basis for the Report and Recommendation, the Magistrate Judge rejected the Detainee Treatment Act of 2005 as any impediment to the relief recommended. The Magistrate Judge asserted that "[t]he question of when, and under what circumstances the existing Protective Order permits Petitioners to meet with their lawyers has no bearing on the question of which Court has jurisdiction to review the merits of Petitioners' challenge to their detention." Report and Recommendation at 6. The Report and Recommendation characterizes the relief as merely enforcement of the extant Protective Order and Access Procedures, see id. at 7, and also asserts the jurisdiction to recommend such relief on

---

[5] See Zalita v. Bush, No. 05-CV-1220 (RMU) (AK) (Memorandum Order dated July 21, 2006) (dkt. no. 14), motion for recons. pending (dkt. no. 17); Saib v. Bush, No. 05-CV-1353 (RMC) (AK) (Memorandum Order dated October 6, 2006) (dkt. no. 45), motion for recons. pending (dkt. no. 49); Kiyemba v. Bush, No. 05-CV-1509 (RMU) (AK) (Memorandum Order dated June 29, 2006) (dkt. no. 60), recons. denied, 2006 WL 2255736 (D.D.C. Aug. 6, 2006); Kabir v. Bush, No. 05-CV-1704 (JR) (LFO) (AK) (Memorandum Order dated May 11, 2006) (dkt. no. 33), recons. denied, Order dated August 25, 2006 (dkt. no. 48); Qasim v. Bush, No. 05-CV-1779 (JDB) (AK) (Memorandum Order dated August 2, 2006) (dkt. no. 21), recons. denied as moot, Minute Order dated August 28, 2006; Alkhemisi v. Bush, No. 05-CV-1983 (RMU) (AK) (Memorandum Order dated July 21, 2006) (dkt. no. 13), motion for recons. pending (dkt. no. 16); Said v. Bush, No. 05-CV-2384 (RWR) (AK) (Memorandum Order dated May 23, 2006) (dkt. no. 23), recons. denied, Minute Order dated May 26, 2006; Thabid v. Bush, No. 05-CV-2398 (ESH) (AK) (Memorandum Order dated August 2, 2006) (dkt. no. 18), recons. denied, Memorandum Opinion and Order dated August 17, 2006 (dkt. no. 22); see also Razakah v. Bush, No. 05-CV-2370 (EGS) (Order dated May 18, 2006) (dkt. no. 23).

the ground that counsel would "presumably" represent petitioners in any proceeding in the Court

of Appeals under the exclusive review provisions of the Detainee Treatment Act, so "the need to

resolve questions regarding the logistics of counsel access will remain an issue." Id. at 6, n.6.

The Magistrate Judge also disregarded the effect of the Military Commissions Act of 2006,

although not yet law at the time the Report and Recommendation was issued, because "any

challenge to the constitutionality of Congress' most recent attempt to repeal *habeas* jurisdiction

in these cases will undoubtedly find its way to the Supreme Court yet again." Id. at 7, n.7.

Further, the Magistrate Judge characterized the Access Procedures as making next friend

issues in these cases essentially irrelevant. According to the Magistrate Judge, "the issue facing

the Court was not whether Petitioner could demonstrate a sufficiently close relationship with his

fellow detainee to maintain traditional next friend standing." See Report and Recommendation

at 3-4. The Magistrate Judge cited his opinion in Adem in support of his conclusion that the

Court had the authority to "'craft [the] procedures necessary' to allow [a detainee] to 'present the

facts surrounding [his] confinement to the Court'" so that respondents could not properly "insist

on a written *pro se* petition as the sole procedural mechanism by which a detainee may

communicate his request for counsel or seek to challenge his potentially indefinite detention

without charge."[6] See Report and Recommendation at 4. See also Adem, 425 F. Supp. 2d at 13

_____

[6] The Magistrate Judge arrived at this conclusion even though respondents had taken
steps to notify detainees of their ability to challenge their detention through petitions for writs of
habeas corpus sent directly to the Court or filed through family members or friends. For
example, beginning in December 2004, the Department of Defense provided written notifications
to all detainees at Guantanamo Bay which informed them of their right to file petitions for writ of
habeas corpus in federal court if they desired to challenge the lawfulness of their detention. The
detainees were informed that they could ask a friend, family member, or lawyer to file a petition
on their behalf, and they were also provided with the address of the United States District Court
in the event that they desired to submit their own petitions to the Court through the mail system

(noting parties' and Judges' assertedly erroneous use of the term "next friend" "though the term's traditional legal context no longer applied").

Accordingly, the Magistrate Judge did not conclude that the next friend petitioners in the above-captioned cases satisfy applicable next friend standing requirements under Whitmore so that the Court could exercise jurisdiction over these cases and compel respondents to permit counsel direct, privileged access to a wartime detainee at Guantanamo Bay, a secure military detention facility. Rather, applying his construction of the Access Procedures, the Magistrate Judge recommended that Judge Oberdorfer discharge petitioners' obligations to show cause why the above-captioned cases should not be dismissed for lack of proper next friend standing, and instead permit counsel direct access to the detainees so that counsel for petitioners may submit evidence of authority to represent a detainee within ten days of counsel's second visit with that detainee.

---

administered by the Department of Defense. See Second Declaration of Frank Sweigart, ¶¶ 3-5 & Exs. A-C (Exhibit A to Resps' Reply in Support of Mot. for Order to Show Cause Why Case Should Not Be Dismissed for Lack of Proper "Next Friend" Standing in Qasim v. Bush, No. 05-CV-1779 (JDB), dkt. no. 2) ("Second Sweigart Declaration").

In addition to these written notifications provided to all detainees at Guantanamo Bay which advised them of their right to file petitions for writ of habeas corpus and options for doing so, the Department of Defense also delivered to detainees who indicated a desire to challenge the legality of their detention a notification providing these detainees with a form to complete and mail to the American Bar Association, which agreed to recruit volunteers counsel for detainees desiring representation. Beginning in September 2005, the Department of Defense delivered (and will continue to deliver on an ongoing basis) this notification to detainees who file *pro se* petitioners for writ of habeas corpus and are not already represented by counsel, as well as other detainees who indicate to Guantanamo personnel that they desire or request the assistance of counsel. See id., ¶ 7 & Ex. E.

## <u>OBJECTIONS TO THE REPORT AND RECOMMENDATION</u>

Under Federal Rule of Civil Procedure 72(b) and 28 U.S.C. § 636(b)(1)(B), when a District Court refers a matter to a Magistrate Judge for proposed findings of fact and recommendations for disposition, the Court reviews that Magistrate Judge's report and recommendation *de novo*, where a party has raised objections.  <u>See</u> Fed. R. Civ. P. 72(b); 28 U.S.C. § 636(b)(1).  The District Judge may accept, reject, or modify the recommendation.  <u>See</u> <u>id.</u>; <u>cf.</u> Rule 8(b) of the Rules Governing Section 2254 Cases in the United States District Courts ("A judge may, under 28 U.S.C. § 636(b), refer the petition to a magistrate judge to conduct hearings and to file proposed findings of fact and recommendations for disposition. . . The judge must determine *de novo* any proposed finding or recommendation to which objection is made. The judge may accept, reject, or modify any proposed finding or recommendation.").

I.    **The Report and Recommendation Should Be Rejected Because This Court Lacks Jurisdiction to Provide the Relief Recommended by the Magistrate Judge.**

The Magistrate Judge's Report and Recommendation should be rejected, first of all, because the Detainee Treatment Act of 2005 vests exclusive jurisdiction over this action, including the relief recommended by the Magistrate Judge, in the D.C. Circuit.  The DTA, among other things, amends 28 U.S.C. § 2241 to eliminate court jurisdiction to consider habeas petitions and other claims by aliens held as enemy combatants at Guantanamo Bay, <u>id.</u>, § 1005(e)(1), and creates an exclusive review mechanism in the D.C. Circuit to address the validity of the detention of such aliens and final decisions of any military commissions, <u>id.</u>, § 1005(e)(1), (e)(2), (e)(3).  Section 1005(e)(2) of the DTA states that the D.C. Circuit "shall have exclusive jurisdiction to determine the validity of any final decision of a Combatant Status Review Tribunal that an alien is properly detained as an enemy combatant," and it further specifies the scope and intensiveness

- 13 -

of that review.  While the Supreme Court in Hamdan v. Rumsfeld, 548 U.S. —, 126 S. Ct. 2749,

2762-69 (U.S. June 29, 2006), held that § 1005(e)(1) of the Detainee Treatment Act did not apply

to habeas petitions pending prior to the enactment of the Act, it recognized that the exclusive

review provisions of the Act did expressly apply to cases pending prior to enactment.  Although

the petitioner in Hamdan escaped the DTA because his challenge did not involve a final decision

of a military commission within the exclusive jurisdiction of the Court of Appeals under §

1005(e)(3), the Court reserved the question of the effect of the exclusive review provisions of the

DTA on other cases, stating that "[t]here may be habeas cases that were pending in the lower

courts at the time the DTA was enacted that do qualify as challenges to 'final decision[s]' within

the meaning of subsection (e)(2) or (e)(3).  We express no view about whether the DTA would

require transfer of such an action to the District of Columbia Circuit."  Hamdan, 126 S. Ct. at

2769, n.14.  The above-captioned cases are allegedly such cases, i.e., challenging petitioner's

designation as an enemy combatant through the Combatant Status Review Tribunal.  Given the

DTA's investment of exclusive review in the Court of Appeals, the District Court lacks

jurisdiction over these cases, for it is well-settled that an exclusive-review scheme, where

applicable, precludes the exercise of jurisdiction under more general grants of jurisdiction,

including habeas corpus.  Cf., e.g., 5 U.S.C. § 703 ("form of proceeding for judicial review is the

special statutory review proceeding relevant to the subject matter in a court specified by statute

or, in the absence or inadequacy thereof, any applicable form of legal action, including actions

for . . . writs of . . . habeas corpus"); Thunder Basin Coal Co. v. Reich, 510 U.S. 200, 207-09

(1994) ("exclusive" jurisdiction under federal Mine Act precludes assertion of district court

jurisdiction); FCC v. ITT World Communications, Inc., 466 U.S. 463, 468 (1984) (Hobbs Act)

- 14 -

("The appropriate procedure for obtaining judicial review of the agency's disposition of these issues was appeal to the Court of Appeals as provided by statute."); Laing v. Ashcroft, 370 F.3d 994, 999-1000 (9th Cir. 2004) ("§ 2241 is ordinarily reserved for instances in which no other judicial remedy is available"); Lopez v. Heinauer, 332 F.3d 507, 511 (8th Cir. 2003) ("Because judicial review was available . . . the district court was not authorized to hear this § 2241 habeas petition."). See also Telecommunications Research and Action Center v. FCC, 750 F.2d 70, 77 (D.C. Cir. 1984) ("even where Congress has not expressly stated that statutory jurisdiction is 'exclusive' . . . a statute which vests jurisdiction in a particular court cuts off original jurisdiction in other courts in all cases covered by that statute") (footnote omitted); id. at 75, 78-79 (request for relief in district court that might affect Court of Appeals' future, exclusive jurisdiction is subject to the exclusive review of the Court of Appeals).

Moreover, on October 17, 2006, the Military Commissions Act of 2006, Pub. L. No. 109-366 (2006) ("the MCA"), became law. The MCA, among other things, amends 28 U.S.C. § 2241 to eliminate altogether district court jurisdiction to consider habeas petitions, as well as any other action "relating to any aspect of the detention, transfer, treatment, trial, or conditions of confinement," of aliens detained by the United States as enemy combatants. See id. § 7. The MCA expressly applies the amendment "to all cases, without exception, pending on or after the date of the enactment of this Act," which would include such above-captioned cases, thereby unambiguously divesting this Court of jurisdiction over these actions. Therefore, the Magistrate Judge had no jurisdictional basis to recommend the relief in the Report and Recommendation, and no jurisdictional basis for the relief therein currently exists, in any event.

- 15 -

Notwithstanding the plain terms of the DTA, and now the MCA, the Magistrate Judge incorrectly concluded that "[t]he question of when, and under what circumstances the existing Protective Order permits Petitioners to meet with their lawyers simply has no bearing on the question of which Court has jurisdiction to review the merits of Petitioner's challenge to his detention."  Report and Recommendation at 6.  See Adem, 425 F. Supp. 2d at 19 ("The issues raised by Adem's motion seeking access to counsel pursuant to the Amended Protective Order do not implicate any of the jurisdictional questions currently pending in the D.C. Circuit and the Supreme Court.").  In reaching this conclusion, the Magistrate Judge avoided addressing the jurisdictional effect of the DTA by essentially creating a "counsel access" exception to the DTA that has no legal foundation.  The Magistrate Judge cannot avoid the DTA's and now the MCA's jurisdictional ouster by framing the issue simply as one of counsel access.  "Without jurisdiction [a] court cannot proceed at all in any cause."  Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 94 (1998).  See Ex parte McCardle, 74 U.S. (7 Wall.) 506, 514 (1869) ("Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause.").  In these cases, the DTA vested exclusive jurisdiction in the Court of Appeals, and the MCA has eliminated district court jurisdiction altogether, which means the Court no longer has the power to order the relief recommended by

the Magistrate Judge.[7]  For this reason, the Magistrate Judge's Report and Recommendation

should be rejected.

The Magistrate Judge also concluded that his Report and Recommendation was a proper

exercise of authority to enforce the applicable Protective Order and Access Procedures,

notwithstanding the DTA's withdrawal of this Court's jurisdiction.  See Adem, 425 F. Supp. 2d

at 19-20.  This conclusion is erroneous.  As an initial matter, the Protective Order and Access

Procedures do not order, require, or compel respondents to permit a counsel visit with a detainee.

As explained supra, the Access Procedures, which are subsidiary to a Protective Order preventing

unauthorized disclosure of classified or protected information, are incorporated into the

Protective Order "to the extent they place limitations on petitioners' counsel in their access to

and interaction with petitioners or handling of information."  Access Procedures ¶ 6.  While the

Access Procedures certainly operate with the assumption that counsel visits will occur in that

they set the terms and procedures applicable to any such visits, they do not themselves compel

respondents to provide such visits[8] on demand of counsel.[9]  Hence, the Court cannot compel

---

[7]  As explained infra § II, the requested relief in this matter is not merely for enforcement of an extant court order.  The Protective Order regime in this case does not itself require or compel a counsel visit; rather, to accept the Magistrate Judge's Report and Recommendation, the Court would be asserting jurisdiction and authority independent of the Protective Order to order a visit or grant access to a detainee.  Such an assertion of jurisdiction would be improper in light of the Detainee Treatment Act's investment of exclusive jurisdiction in the Court of Appeals, as well as the Military Commission Act's elimination of district court jurisdiction, and respondents' argument in this regard is in no way immaterial or premature.

[8]  While the Access Procedures provide that "[r]easonable efforts will be made to accommodate the counsel's request regarding the scheduling of a meeting," that language is embedded in a paragraph dealing solely with logistical arrangements as to the date and timing of otherwise appropriate counsel meetings with represented petitioners.  See Access Procedures § III.D.1.

[9]  The relationship between counsel visits and the access procedures in these cases would

- 17 -

respondents to permit a visit by counsel with a detainee by relying upon "enforcement" of the terms of the Protective Order and Access Procedures.

Thus, the cases cited by the Magistrate Judge in <u>Adem</u> decision, upon which he relies in his Report and Recommendation, to support an order requiring respondents to permit a counsel visit, <u>see</u> <u>Adem</u>, 425 F. Supp. 2d at 20, are distinguishable from the present context. Those cases involved either a court's authority to enforce ongoing protective orders specifically prohibiting public disclosure of confidential discovery information[10] or the court's power to enforce prospective injunctions though civil contempt penalties.[11] The cases would also be distinguishable in that while they may involve a court's authority to wind-up previously

---

be analogous to other cases in which an omnibus protective order is entered at the outset of the case governing the use and handling of information that will be exchanged between parties in discovery. The omnibus protective order may set the terms of how information obtained in discovery is to be treated, shared, or stored, for example, but a party's entitlement to any particular requested discovery is settled through court process (<u>e.g.</u>, a motion to compel) and not through the protective order. Thus, an omnibus protective order operates with the assumption that discovery will occur, but typically does not by its own terms obligate the parties to produce any particular information.

[10] <u>See</u> <u>Gambale v. Deutsche Bank, AG</u>, 377 F.3d 133, 139 (2d Cir. 2004) (concluding that court has power "to dispose of material in its files as it thinks appropriate or to modify or vacate its own protective orders with respect to" confidential documents after conclusion of case); <u>Poliquin v. Garden Way, Inc.</u>, 989 F.2d 527, 535 (1st Cir. 1993) ("Where the district court does protect material during discovery, it is common to provide . . . for post-trial protection including the return or destruction of protected material."); <u>United Nuclear Corp. v. Cranford Ins. Co.</u>, 905 F.2d 1424, 1427 (10th Cir. 1990) (concluding that court has power to modify ongoing protective order prohibiting public disclosure of all discovery materials following dismissal of underlying lawsuit).

[11] <u>Broderick v. Donaldson</u>, 437 F.3d 1226 (D.C. Cir. 2006) (concluding that court has power to impose civil contempt sanctions on employer for violation of 1988 order imposing continuing obligations on employer based employee's successful sexual harassment suit); <u>Armstrong v. Executive Office of the President</u>, 1 F.3d 1247, 1281, 1289 (D.C. Cir. 1993) (concluding that court has power to impose civil contempt sanctions based on defendant's failure to comply with "multi-part declaratory and injunctive order" regarding preservation of electronic federal records).

exercised jurisdiction (such as in the oversight of the disposition of documents obtained through court-sanctioned discovery) or to enforce valid, on-going injunctions, here the relief recommended by the Magistrate Judge wreaks a radical reversal of long-standing practice under the Access Procedures in the Guantanamo cases, with significant impact in the cases, including that respondents will be required to provide direct, privileged access to wartime detainees in a military detention facility by counsel merely purporting to represent a detainee, without any showing by counsel of proof of appropriate authority to represent the detainee directly or through a next friend satisfying appropriate standing requirements.  Thus, the Report and Recommendation improperly asserts jurisdiction to move this case forward in the face of a statutory withdrawal of this Court's jurisdiction by an intervening Act of Congress, cf. United States v. Mine Workers, 330 U.S. 258, 295 (1947) ("The right to remedial relief falls with an injunction which events prove was erroneously issued . . . and a fortiori when the injunction or restraining order was beyond the jurisdiction of the court."); Peacock v. Thomas, 516 U.S. 349, 255 (1996) (concluding that the "primary lawsuit must contain an independent basis for federal jurisdiction" in order for the court to exercise jurisdiction over ancillary enforcement claims), and raises very real separation of powers concerns.[12]

---

[12] See also Cafeteria & Rest. Workers Union, Local 473 v. McElroy, 367 U.S. 886, 890 (1961) ("The control of access to a military base is clearly within the constitutional powers granted to both Congress and the President"); Hamdi v. Rumsfeld, 294 F.3d 598, 602-03 (4th Cir. 2002) (court notes in context of challenge to standing of next friend purporting to act on behalf of enemy combatant detainee that the standing doctrine "ensure[s] that the plaintiff has a sufficient personal stake in the outcome of a dispute to render judicial resolution of it appropriate in a society that takes seriously both the idea of separation of powers and, more fundamentally, the system of democratic self-government that such separation serves") (citation and internal quotations omitted).

For similar reasons, the Magistrate Judge's Report and Recommendation cannot legitimately be grounded in any authority of the Court under Judge Kollar-Kotelly's decision in Al Odah v United States, 346 F. Supp. 2d 1 (D.D.C. 2004), which the Magistrate Judge cited in the Adem decision in support of his conclusion that the Court may craft procedures necessary to enforce a right to counsel to pursue a petition, see Adem, 425 F. Supp. 2d at 11-12, 24. The basis of the Al Odah decision rested not on any absolute right to counsel, but on a court's discretionary, statutory authority in habeas cases to appoint counsel to represent Guantanamo petitioners properly before the Court, if warranted. See Al Odah, 346 F. Supp. at 4-5, 7-8 (citing 18 U.S.C. § 3006A). That authority under the habeas statute is no longer applicable given the explicit elimination of this Court's jurisdiction and investment of exclusive jurisdiction over this type of action in the Court of Appeals. Further, Al Odah did not, as here, involve any issue as to whether a habeas case was properly pending before the Court, so as to support counsel's direct access to a detainee. The case had been filed by family member next friends who had retained counsel, and respondents did not object to providing counsel access; merely the monitoring of counsel-detainee meetings was at issue. See 346 F. Supp. 2d at 4-5 ("[T]he Court has confined its present inquiry to the attorney access issues that uniquely affect the three named Petitioners in this case. Accordingly, the Court considers whether the Government can impose real time monitoring on the three Petitioners.").

The Magistrate Judge's Report and Recommendation also erroneously purports to find authority to recommend the requested relief in the fact that the DTA provides detainees the opportunity to seek review in the D.C. Circuit of the validity of a Combatant Status Review Tribunal determination that the detainee is an enemy combatant and thus properly detainable. See Report and Recommendation at 6. According to the Court, counsel would "presumably"

- 20 -

represent petitioners in any proceeding in the Court of Appeals under the exclusive review provisions of the Detainee Treatment Act, so "the need to resolve questions regarding the logistics of counsel access will remain an issue." Id. at 6, n.6. That an exclusive review proceeding before the D.C. Circuit is possible, however, does not authorize the Court to act; to the contrary, it precludes the Court from acting on this matter. As explained above, the DTA vests "exclusive" jurisdiction in the D.C. Circuit "to determine the validity of any final decision of a Combatant Status Review Tribunal that an alien is properly detained as an enemy combatant." See DTA § 1005(e)(1). The DTA also expressly provides that exclusive review in the D.C. Circuit is applicable to pending cases. Id. § 1005(h). As the Court of Appeals explained in Telecommunications Research and Action Center v. FCC, 750 F.2d 70, 75, 78-79 (D.C. Cir. 1984), a request for relief in district court that might affect the future, exclusive jurisdiction of the Court of Appeals is subject to the exclusive review of the Court of Appeals. Consequently, issues of counsel access, and the prerequisites for such access, if any, are exclusive matters for the D.C. Circuit. No authority can be found for the Magistrate Judge's Report and Recommendation in the fact that an exclusive review mechanism is available for detainees in the D.C. Circuit. The Magistrate Judge's Order is contrary to the statutory withdrawal of this Court's jurisdiction pursuant to the Detainee Treatment Act, as well as the recently enacted Military Commissions Act.

II.    **The Magistrate Judge's Report and Recommendation Should Be Rejected Because
It Is Contrary To The Language of the Access Procedures And The Applicable
History And Context of The Guantanamo Cases And Because It Results In a Regime
Inconsistent With Jurisdictional Principles.**

A.    **The Magistrate Judge's Interpretation of the Access Procedures Is Contrary
to the Language of The Access Procedures and the History and Context of
the Litigation.**

Aside from lacking jurisdiction to issue the relief recommended in his Report and

Recommendation, the Magistrate Judge acted in an erroneous fashion in rejecting respondents'

position that the Access Procedures require that "[p]rior to being permitted access to the

detainee," counsel must "provide evidence of his or her authority to represent the detainee," and

then, subsequent to direct access to the detainee being permitted, provide an additional, direct

authorization of representation from the detainee on whose behalf the habeas petition was filed,

"no later than then (10) days after the conclusion of a second visit with the detainee." See

Access Procedures § III.C.  The Access Procedures govern "for purposes of litigating the cases in

which this Order [the Protective Order] is issued." Id. § I.  Consistent with that purpose, § III.C

of the Access Procedures provides, in pertinent part:

1.    Prior to being permitted access to the detainee, counsel must provide DoD
with a Notification of Representation. This Notification must include the
counsel's licensing information, business and email addresses and phone
number, as well as the name of the detainee being represented by the
counsel. Additionally, counsel shall provide evidence of his or her
authority to represent the detainee.

2.    Counsel shall provide evidence of his or her authority to represent the
detainee as soon as practicable and in any event no later than ten (10) days
after the conclusion of a second visit with the detainee.  The Court
recognizes that counsel may not be in a position to present such evidence
after the initial meeting with a detainee.  Counsel for detainees and
counsel for respondents shall cooperate to the fullest extent possible to
reach a reasonable agreement on the number of counsel visits allowed.
Should counsel for a detainee believe that the government is unreasonably

- 22 -

limiting the number of visits with a detainee, counsel may petition the
Court at the appropriate time for relief.

The Access Procedures thus impose, in a paragraph applicable to certain requirements that must
be met "[p]rior to being permitted access to the detainee," § III.C.1, a requirement of some
evidence of authority to represent the detainee.  This evidence has typically taken the form of
letters from detainees directly authorizing a challenge to their detention, or affidavits and
authorizations of "next friends" who have filed petitions on behalf of detainees.  Then, a separate
paragraph of the Access Procedures, § III.C.2,  requires counsel to submit final evidence of his or
her authority to represent the detainee after having the opportunity to meet with the detainee.[13]
Hence, the Access Procedures contemplate a two-layer requirement regarding counsel's authority
to bring and then maintain the lawsuit.

     The Magistrate Judge interpreted § III.C.2, however, merely to refer to the timing of the
requirement imposed by the last sentence of § III.C.1.  See Adem, 425 F. Supp. 2d at 20-23.  The
Magistrate Judge's reading, however, fails to account for the fact that a proof of authorization
requirement is contained in a paragraph that begins, "Prior to being permitted access to the
detainee . . . ."  Instead of giving credence to two separate paragraphs in § III.C containing
authority of representation requirements, the Magistrate Judge's reading of § III.C effectively,
and improperly, moves the last sentence of § III.C.1 to combine it into § III.C.2.  This is
inconsistent with the structure of the two paragraphs, as well as with the fact that each of the
paragraphs in § III.C refers to separate submission requirements.

--------------------

[13] Additional paragraphs in § III.C of the Access Procedures concern notification of
withdrawal or termination of representation by counsel, Access Procedures § III.C.3, and
certification of the source of funding for counsel in the representation, id. § III.C.4.

Furthermore, respondents' reading of the Access Procedures is consistent with the history and context of the Guantanamo habeas cases and the application of the Access Procedures in those cases, while the Magistrate Judge's reading is inconsistent with that history, context, and application. The Guantanamo detainee habeas cases pending when the Protective Order and Access Procedures were negotiated and entered in the cases were uniformly next friend cases brought by family member next friends. See In re Guantanamo Detainee Cases, 344 F. Supp. 2d 174 (D.D.C. 2004) (entering Protective Order on Nov. 8, 2004). The counsel access procedures that served as the basis for the current Access Procedures were initially proposed by respondents in July 2004. The procedures explicitly required, in what would become the current § III.C.1, that "[p]rior to being permitted access to the detainee," in addition to a Notification of Representation,

> the counsel must provide sufficient details regarding the circumstances of his/her retention to demonstrate the counsel's authority or standing to bring a habeas or other federal court action on the detainee's behalf.

See Response to Complaint in Accordance with Court's Order of July 25, 2004, Exhibit A, in Al Odah v. United States, No. 02-CV-0828 (CKK) (dkt. no. 46) (copy attached for the Court's convenience at Tab 1). In addition, in a paragraph § III.C.2, the procedures provided,

> After meeting with the detainee, counsel must provide DoD with an *Acknowledgement of Representation*. This document must be signed by the detainee and must specifically state that the detainee is being represented in habeas or other federal litigation by counsel named in the Acknowledgement.

Id. (emphasis and misspelling of "Acknowledgment" in original). Furthermore, it was expressly contemplated and conveyed to the Court that once counsel demonstrated his or her authority "to bring a habeas . . . action on the detainee's behalf," i.e., at the time through demonstration that the case was an appropriate next friend case, the opportunity for access to the detainee would

- 24 -

allow, where appropriate, conversion of the next friend petition into a petition directly authorized by the detainee.  See, e.g., Tab 1 (Response to Complaint in Accordance with Court's Order of July 25, 2004 in Al Odah) at p. 30 n.14 ("the access [to detainees] provided by the military will allow counsel to meet with the detainees, and counsel may then wish to convert their next-friend petition into a direct petition or otherwise amend their petition").

Subsequently, other aspects of the Protective Order and Access Procedures were the subject of negotiations and litigation of certain issues before Senior Judge Green, who served as Coordinating Judge in the cases at the time.  This process culminated in a version of the access procedures being proposed by one petitioner's counsel,[14] to which respondents objected in part.[15] Both versions proposed by the parties contained the versions of § III.C.1 and C.2 originally proposed by respondents, with the additional requirement that the "Acknowledgment of Representation" be provided "as soon as is practical," and the provisions were considered non-controversial, though there had been discussion between counsel for the parties regarding the number of visits with a detainee that counsel would be allowed once access was permitted to obtain any such direct authorization of representation from the detainee.  Thus, when Judge Green issued the Protective Order and Access Procedures in their current form, no change in contemplated operation of Access Procedures, i.e., access being conditioned on initial proof of

---

[14] See Petr's Mot. for Order Requiring Parties to Abide By Proposed Procedures for Counsel Access & Ex. A (Proposed Procedures for Counsel Access) (dkt. no. 33) (filed Oct. 22, 2004 in Begg v. Bush, No. 04-CV-1137 (RMC)) (copy attached for the Court's convenience at Tab 2).

[15] See Resps' Response to Nov. 1, 2004 Order Setting Deadline for Submission in Response to Petr's Mot. for Order Requiring Parties to Abide By Proposed Procedures for Counsel Access & Ex. 1 (Revised Procedures for Counsel Access) (filed Nov. 4, 2004 in In re Guantanamo Detainee Cases, Nos. 02-CV-0299, et al.) (copy attached for the Court's convenience at Tab 3).

authority to represent a detainee with the requirement that direct authorization be submitted "as soon as practical" thereafter (though in no event more than 10 days after a second visit, under the final version of the Access Procedures), was comprehended.

Indeed, the consistent practice of respondents throughout the litigation has been to require counsel to provide proof of some authority to represent a detainee, either through a next friend or directly, prior to counsel being permitted access to the detainee.  It was not even suspected that the language of § III.C.1 and C.2 might raise an issue until late last year when respondents began to confront various petitioners' counsel seeking access to detainees regarding counsel's authority to represent detainees they purported to represent, either directly or through improper (in respondents' view) next friends.  It was at that time a reading of § III.C.1 and C.2 consistent with the Magistrate Judge's reading in this case began to be cited by counsel resistant to providing evidence of proof of their representation authority.

The Magistrate Judge has attempted to dismiss respondents' position as unsupportable because in his view, the next friend device was merely a "legal fiction" that became "largely irrelevant" because of the possibility that, in light of the notifications provided by DoD to detainees of their ability to contact the Court and submit a petition directly and the opportunity for visits between counsel and detainees in properly brought next friend cases, detainees might directly submit or authorize a habeas petition, such that the next friend issue becomes moot.  See Adem, 425 F. Supp. 2d at 12-14.  The fact of the matter is, however, that the next friend device has not been "irrelevant" or mere fiction in the Guantanamo habeas cases.  Indeed, habeas counsel have sought and the Court has granted relief, such as requiring advance notice of any transfer of the detainee from Guantanamo, in cases brought by putative next friends prior to counsel visiting detainees, presumably based on the putative standing of the next friends.

Moreover, the possibility that a next friend authorization might become moot does not mean that the Access Procedures never contemplated a showing of representation authority prior to access to a detainee being granted.  Indeed, because in a "next friend" case, the detainee on whose behalf the case is brought "remains the real party in interest," see Whitmore, 495 U.S. at 163, it is that detainee's legitimate desires and wishes that control in the litigation.  See also id. at 164 (cautioning against "intruders or uninvited meddlers" filing lawsuits on behalf of unwitting strangers).  It is unremarkable that a next friend authorization might become moot once direct access to the detainee on whose behalf a case is brought is obtained; the likelihood that the detainee may express his desires with respect to a lawsuit brought on his behalf certainly does not render the next friend device "irrelevant."

In sum, the Magistrate Judge's apparent view that respondents' reading of the Access Procedures is contrary to the factual and procedural underpinnings of the Guantanamo cases is wrong.  Indeed, for these reasons explained above, the Magistrate Judge's reading of the Access Procedures is inconsistent with the language of the Access Procedures, as well as with the history and context of the Guantanamo habeas cases and the application of the Access Procedures in the cases, and should be rejected.[16]

---

[16] Previously, in Adem, Judge Roberts rejected the history and context of the Access Procedures as developed in the Guantanamo habeas case as being of any value in interpreting the Access Procedures.  See Adem, 2006 WL 1193853 at *6 (dkt. no. 42).  However, the Access Procedures were developed in habeas cases that were being coordinated pursuant to the order and direction of the Court as a whole, including through a September 15, 2004 Resolution of the Executive Session – coordination in which this Court participated at the time by transferring then-pending Guantanamo cases to Judge Green for handling consistent with the Court's orders.  Furthermore, the Court in this case imported for use in this case the Access Procedures developed under Judge Green.  See Order (Oct. 11, 2005).  It would be unreasonable in such circumstances for the Court to interpret the Access Procedures inconsistent with that development and long-standing practice, especially in light of the Detainee Treatment Act (and now the Military Commissions Act) and the previously expressed sense of the Court to defer

**B.    The Magistrate Judge's Interpretation of the Access Procedures Results In The Extra-Legal Assertion of Court Jurisdiction And Is Contrary To Law.**

As explained above, the Magistrate Judge's reading of the Access Procedures is that counsel who purport to represent a detainee through a putative next friend or otherwise need not provide any evidence of any authority to represent the detainee prior to being entitled to privileged access to the detainee.  Even if such a reading were possible divorced from consideration of the history and context of the Guantanamo habeas cases, the reading creates a scheme that is contrary to law, and it can and should be rejected for that reason alone.  The Magistrate Judge's interpretation of the Access Procedures essentially results in the creation of court jurisdiction in habeas actions that is contrary to the plain language of the habeas statute and requirements for standing under that statute.  Section 2242 of the habeas statute requires that a habeas petition must be "signed and verified by the person for whose relief it is intended or by someone acting in his behalf."  28 U.S.C. § 2242.  Thus, the law provides only two avenues by which a habeas petition may be properly brought: (1) the individual who is seeking habeas relief must sign and verify the petition, i.e., the petition must be directly authorized; or (2) the petition must be signed and verified by another person acting on that individual's behalf – a "next friend" – whom the Supreme Court has determined must satisfy certain requirements in order to properly serve in this capacity.  See Whitmore, 495 U.S. at 163-64.  The Whitmore requirements have not been determined to have been satisfied in these cases; thus, the Magistrate Judge's Report and Recommendation in effect invents a new, third option for standing that is not found in the habeas statute or case law.  Under the theory reflected in the Report and Recommendation, a court may

action in the Guantanamo habeas cases pending guidance from the Court of Appeals on the jurisdictional issue.

- 28 -

exercise jurisdiction over a case simply upon some person acting as a conduit and passing along to an attorney a purported desire for assistance of counsel by some other individual, without any demonstration of an attorney-client relationship between counsel and the person on whose behalf relief is sought or satisfaction of the "next friend" requirements established by the Supreme Court.  See Adem, 425 F. Supp. 2d at 13 ("[T]he detainees who initiate a *habeas* petition on behalf of a fellow detainee generally do not seek to serve as a 'next friend' in the traditional sense, but are simply passing on another detainee's request for help, a fact that can be confirmed once counsel meets directly with the detainee.").[17]   There is simply no basis in the law for such an approach.[18]

The Magistrate Judge's Order attempts to justify the creation of this unprecedented "conduit" theory of establishing standing in habeas cases by citing certain concerns about the circumstances of detention at Guantanamo Bay which, in the Magistrate Judge's view, apparently warrant an extra-legal scheme for establishing jurisdiction in these habeas cases.  Not only is the assessment reflected in the Report and Recommendation and the Adem opinion of the factual

---

[17]   Although the Magistrate Judge believed the "next friend" standing doctrine to be merely a "legal fiction" in the Guantanamo detainee habeas cases and largely irrelevant in these cases, see Adem, 425 F. Supp. 2d at 13, other Judges of the Court who have addressed the issue of a detainee's ability to seek habeas relief on another detainee's behalf have recognized that the Supreme Court's Whitmore requirements for next friend standing must be satisfied before the Court may exercise jurisdiction over the case.  See, e.g., Ahmed v. Bush, No. 05-CV-0665 (RWR) (Order dated May 24, 2005) (dkt. no. 12); Hamlily v. Bush, No. 05-CV-0763 (JDB) (Order dated October 3, 2005) (dkt. no. 16); Ahmed Doe v. Bush, No. 05-CV-1458 (ESH), et al. (Order dated November 4, 2005) (dkt. no. 10) (Oberdorfer, J.).

[18]   Thus, even if respondents' reading of § III.C of the Access Procedures was not consistent with the plain language of § III.C, as the Magistrate Judge believed, respondents' application of the Access Procedures to require some demonstration of appropriate representation authority prior to providing access to the detainee "for purposes of litigating the case[] in which the . . . [Access Procedures were] issued," Access Procedures § I, is compelled by jurisdictional considerations.

circumstances involved often inaccurate, but the circumstances of detention at Guantanamo Bay in any event do not justify disregarding the plain language of the habeas statute and governing case law.

The Magistrate Judge incorrectly concluded that an analysis of whether proper habeas standing exists in this case may be avoided in favor of an extra-legal scheme for establishing jurisdiction because the notifications provided by the Department of Defense to detainees at Guantanamo Bay regarding their right to file a petition for habeas corpus allegedly caused some level of confusion among unnamed detainees. Specifically, the Magistrate Judge criticized the notifications as "fail[ing] to provide any explanation of what a petition for *habeas corpus* is or how a detainee would go about getting one," Adem, 425 F. Supp. 2d at 12, n.9, and informing the detainees that they can "ask a friend" to file a petition on their behalf without also advising them of the jurisdictional requirements of "next friend" standing as articulated by the Supreme Court, see id. at 14-18. The Magistrate Judge cites no legal basis for these critiques. Moreover, the government cannot simply waive jurisdictional requirements mandated by the habeas statute and governing Supreme Court precedent by advising detainees that they may "ask a friend" to file a habeas petition on their behalf, nor was it the government's intent to do so. See Floyd v. District of Columbia, 129 F.3d 152, 155 (D.C. Cir. 1997) (noting that "jurisdiction cannot be waived" and the Court has "an independent obligation to assure" itself of jurisdiction).

In any event, the record in this case establishes that the Department of Defense's notifications adequately informed detainees how they may challenge the legality of their detention and, as a result, scores of petitions have been filed on behalf of detainees at Guantanamo Bay. The notifications provided beginning in December 2004 notified each detainee at Guantanamo Bay that "you may challenge your detention in a United States court"

and "[y]ou may ask a civilian judge to look at the lawfulness of your detention through a process

called a *petition for writ of habeas corpus*." See Second Sweigart Declaration, Exs. A-C. The

notifications further explained that detainees may "ask a friend or family member or a lawyer" to

file a petition on their behalf, or they may do so themselves by writing to the United States

District Court for the District of Columbia at an address provided on the notifications. See id.

Thus, although the notifications may not have provided the detainees with a precise legal

definition and explanation of a "petition for writ of *habeas corpus*," they clearly explained to the

detainees that they may ask a United States judge to review whether they should be detained at

Guantanamo Bay and provided them with options on how to do so. As a result of these

notifications, 58 petitions for writ of habeas corpus, i.e., letters construed as petitions, have

already been filed by detainees writing directly to the Court.[19] Further, other detainees have

directly authorized petitions by writing to lawyers already representing other detainees, and

scores of additional detainees have filed petitions through family members and friends who

arguably satisfy the Supreme Court's requirements for next friend standing.[20] Given that

_____

[19] As explained in the record, detainees are afforded the opportunity regularly to send and receive mail through the mail system administered by the Department of Defense and through the International Committee for the Red Cross. See Second Sweigart Declaration, Ex. D. These systems were developed and operational prior to and independent of the Protective Order in this litigation. See id.; see also, e.g., Coalition of Clergy, Lawyers, and Professors v. Bush, 310 F.3d 1153, 1160 (9th Cir. 2002) (noting, pre-Rasul, that Guantanamo detainees were able to send and receive mail and were permitted to communicate outside Guantanamo through the International Committee of the Red Cross). Given that Guantanamo Bay is an overseas military base operating during a time of war, respondents acknowledge that mail may take some time to be transmitted to and from Guantanamo Bay through the United States Postal Service (which is beyond the control of the Department of Defense), however, the processing by the Department of Defense of incoming and outgoing detainee mail at Guantanamo Bay has consistently taken two weeks, on average. See Second Sweigart Declaration, Ex. D.

[20] In addition, as explained supra, detainees who indicate to Guantanamo personnel that they desire a lawyer, are provided a form in their own language (or are read the form in their

hundreds of detainees have legitimately sought to challenge the legality of their detention by

seeking habeas relief in federal court, the Magistrate Judge's conclusion that the notifications

were inherently misleading and insufficient is incorrect, and in any event, does not justify

excusing petitioners from satisfying the necessary jurisdictional requirements in habeas cases.[21]

See Whitmore, 495 U.S. at 155-56 ("A federal court is powerless to create its own jurisdiction by

embellishing otherwise deficient allegations of standing.").[22]

Furthermore, the prejudicial impact of the Magistrate Judge's interpretation of the Access

Procedures is significant.  Under the Magistrate Judge's interpretation, respondents would be

required to provide direct, privileged access to wartime detainees in a military detention facility

by counsel merely purporting to represent a detainee, without any showing by counsel of proof of

appropriate authority to represent the detainee directly or through a next friend meeting

appropriate standing requirements.  Indeed, this interpretation of the Access Procedures could

permit virtually any attorney to file suit asserting that they represent a detainee and thereby

require the government to provide them privileged access to the detainee.  Even if counsel's

---

language if they are illiterate) to request a lawyer from the ABA.  See Second Sweigart
Declaration, ¶ 7 & Ex. E.

[21] Of course, because the Magistrate Judge's Order purports to rest on the interpretation of
operative language of the Access Procedures and does not resolve respondents' motion for an
order to show cause as to why the case should not be dismissed for lack of proper "next friend"
standing, further proceedings on issues such as the adequacy of the notifications to detainees for
purposes of considering respondents' challenge to next friend standing conceivably would be
appropriate should the jurisdictional issues under the Detainee Treatment Act and Military
Commissions Act be resolved in favor of retention of district court jurisdiction over detainees'
habeas challenges.

[22] As explained supra, Judge Kollar-Kotelly's opinion in Al Odah cannot be viewed
somehow authorizing the Court to ignore jurisdictional standing requirements, if such a thing
were even possible.  The Al Odah case did not involve a situation in which a counsel's authority
to act in the case was in question.

ability to claim authority to represent a detainee were cabined by having to receive word of a detainee's desire for counsel through a purported "conduit" detainee, that arrangement could lead to detainees effectively initiating habeas petitions on behalf of, with concomitant required counsel access to, any detainee they recall once having a conversation with that gave the "conduit" detainee the inkling that the other detainee might want a lawyer or might want to challenge his detention. The separation of powers concerns implicated in such an arrangement of compelled access to wartime detainees in a military detention facility are substantial. Such an arrangement flies in the face of fundamental standing and jurisdictional concepts in the law of habeas corpus.

Accordingly, the Magistrate Judge's interpretation of the Access Procedures results in an extra-legal assertion of court jurisdiction and, thus, is improper and should be rejected.

## <u>CONCLUSION</u>

For the foregoing reasons, the Magistrate Judge's Report and Recommendation is contrary to law and otherwise improper. The October 6 Report and Recommendation, accordingly, should be rejected.

Dated: October 26, 2006                    Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

DOUGLAS N. LETTER
Terrorism Litigation Counsel

    /s/ Preeya M. Noronha
JOSEPH H. HUNT (D.C. Bar No. 431134)
VINCENT M. GARVEY (D.C. Bar No. 127191)
TERRY M. HENRY
JAMES J. SCHWARTZ
PREEYA M. NORONHA
ROBERT J. KATERBERG

- 33 -

NICHOLAS J. PATTERSON
ANDREW I. WARDEN
EDWARD H. WHITE
Attorneys
United States Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Ave., N.W.
Washington, DC  20530
Tel:  (202) 514-4107
Fax:  (202) 616-8470

Attorneys for Respondents