IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ABBAR SUFIAN AL HAWARY, *et al.*, | ) ) ) |
| Petitioners/Plaintiffs, | ) ) |
| v. | ) ) Civil No. 05-CV-1505 (RMC) |
| GEORGE W. BUSH, *et al.*, | ) ) |
| Respondents/Defendants. | ) ) ) |

**MOTION FOR RECONSIDERATION OF ORDER DISMISSING PETITION
FOR HABEAS CORPUS AND DENYING MOTION TO STAY PROCEEDINGS
AND HOLD IN ABEYANCE**

Pursuant to Federal Rule of Civil Procedure 60(b), Petitioner Abbar Sufian Al Hawary ("Al Hawary" or "Petitioner") hereby files this Motion for Reconsideration of Order Dismissing Petition for Habeas Corpus and Denying Motion to Stay Proceedings and Hold in Abeyance, and in support thereof states as follows:

**INTRODUCTION**

In light of the Supreme Court's recent, and very rare, reversal of its previous denial of certiorari in *Boumediene v. Bush*, Petitioner requests that this Court reconsider its May 9, 2007 Order dismissing Al Hawary's petition for habeas corpus and denying his motion to stay and hold the matter in abeyance.[1] On June 29, 2007, the Supreme Court granted certiorari in *Boumediene v. Bush*, 476 F.3d 981 (D.C. Cir. 2007), using a procedural mechanism it has not exercised in decades. The Court, pursuant to Supreme Court Rule 44.2 ("Sup. Ct. R."), granted the *Boumediene* petitioners' petition for

---

[1] *See* Order, *Al Hawary v. Bush*, Civil Action No. 05-1505 (RMC) (May 9, 2007), attached as Exhibit A.

rehearing, vacated its April 2, 2007 order denying certiorari and granted the writ of

certiorari. The Court's action indicates that there were "intervening circumstances of a

substantial or controlling effect," or that evidence of "substantial grounds not previously

presented" became available. Sup. Ct. R. 44.2. In response to the Supreme Court's

decision, the United States Court of Appeals for the District of Columbia Circuit

("CADC") has recalled its mandate in *Boumediene* and in *Al-Odah v. Bush*.[2] Based on

the Supreme Court's reconsideration of its previous decision and the CADC's response,

this Court has granted motions for reconsideration of dismissal orders in at least two

cases similar to this one. *See* Order, *Al Shimrani v. Bush*, Civil Action No. 05-2249

(RMC) (Aug. 22, 2007), attached as Exhibit B; Order, *Saib v. Bush*, Civil Action No. 05-

1353 (RMC) (Sept. 7, 2007), attached as Exhibit C. Petitioner seeks a similar

reconsideration of this Court's May 9, 2007 Order.

## PROCEDURAL HISTORY

Petitioner filed a petition for writ of habeas corpus on July 28, 2005. After the

Supreme Court's April 2, 2007 denial of certiorari in *Boumediene*, Respondents filed a

motion to dismiss the petition, relying on the CADC's February 20, 2007 decision in

*Boumediene* and the Supreme Court's subsequent denial of certiorari. This Court, on

May 9, 2007, dismissed Al Hawary's petition for habeas corpus and denied his motion to

stay proceedings and hold in abeyance. *See* Exhibit A. On June 8, 2007, Petitioner filed

a Notice of Appeal challenging the May 9, 2007 Order.[3]

---

[2] *See* Order Granting Mot. to Recall Mandates, *Al-Odah v. Bush*, 05-5064 (D.C. Cir. July 26, 2007); *Boumediene v. Bush*, 05-5062 (D.C. Cir. July 26, 2007).

[3] The filing of a notice of appeal from the Court's Order does not deprive the Court of jurisdiction over this Motion. *See Piper v. U.S.*, 374 F.Supp.2d 73, 77 (D.D.C. 2005)

## JURISDICTION

Pursuant to Federal Rule of Civil Procedure 60(b), Petitioner now moves for reconsideration of the Court's May 9, 2007 Order. Rule 60(b) grants this Court the power to relieve a party from a final judgment, order, or proceeding when the Court finds "reason[s] justifying relief from the operation of the judgment." Fed. R. Civ. Proc. 60(b)(6).

## *BOUMEDIENE* LEGAL BACKGROUND

On February 20, 2007, the CADC ruled in *Boumediene* that the Military Commissions Act of 2006 (MCA), Pub. L. No. 109-366, 120 Stat. 2600 (2006), eliminated the jurisdiction of the federal courts to consider habeas actions by Guantánamo detainees, and that the Guantánamo detainees, as aliens outside the sovereign territory of the United States, lack constitutional rights and therefore lack standing to challenge the elimination of jurisdiction under the Suspension Clause of the United States Constitution.[4] *See Boumediene v. Bush*, 476 F.3d 981 (D.C. Cir. 2007).

On March 5, 2007, the *Boumediene* and *Al Odah* petitioners filed certiorari petitions in the Supreme Court seeking review of the CADC's judgment. S. Ct. Nos. 06-1195 & 06-1196. On April 2, 2007, the Supreme Court denied the petitions. 127 S.Ct.

---

(district court had jurisdiction to consider Rule 60(b) motion where party first filed a notice of appeal, and subsequently filed a Rule 60(b) motion); *Hoai v. Vo*, 935 F.2d 308, 312 (D.C. Cir. June 1991) (district court had jurisdiction to consider Rule 60(b) motion where party filed a notice of appeal and a Rule 60(b) motion on the same date). When both a Rule 60(b) motion and an appeal are pending simultaneously, a district court may consider the Rule 60(b) motion and, "if the district court indicates that it will grant relief, the appellant may move the appellate court for a remand in order that relief may be granted." *Piper*, 374 F.Supp.2d at 77; *Hoai*, 935 F.2d at 312. *See also*, *Greater Boston Television Corp. v. FCC*, 463 F.2d 268, 280 (D.C. Cir. Dec. 29, 1971) (stating that a Rule 60(b) motion to provide relief may be considered by the district court while an appeal is pending).

[4] *Boumediene* is consolidated with *Al Odah v. United States*, CADC docket No. *05-5064.*

1478 (2007). On April 27, 2007, the *Boumediene* and *Al Odah* petitioners filed petitions for rehearing and motions to defer consideration of those petitions pending the petitioners' exhaustion of their remedies under the DTA. In their June 22, 2007 reply in support of the petitions for rehearing, the *Al Odah* petitioners annexed a declaration of Lieutenant Colonel Stephen Abraham, United States Army Reserve (the "Abraham Declaration"), a military intelligence officer who was involved in the Combatant Status Review Tribunal process. The Abraham Declaration sharply calls into question the legitimacy and fairness of that regime. *See* Abraham Declaration, attached as Exhibit D. A week later, on June 29, 2007, the Supreme Court granted the petition for rehearing, vacated its previous order of April 2, 2007 denying certiorari, and granted a writ of certiorari in *Boumediene* and *Al-Odah*. *See* Order Granting Certiorari, *Boumediene v. Bush* (06-1195), *Al Odah v. United States* (06-1196), June 29, 2007, attached as Exhibit E.

I.     **IN LIGHT OF THE EXTRAORDINARY CIRCUMSTANCES PRESENT IN THIS CASE, THE COURT SHOULD RECONSIDER ITS MAY 9, 2007 ORDER.**

Rule 60(b)(6) allows courts "to vacate judgments whenever such action is appropriate to accomplish justice." *Klapprott* v. *United States*, 335 U.S. 601, 614-615 (1949). Rule 60(b)(6) provides that a court may consider "any other reason justifying relief from the operation of the judgment" when entertaining a motion for reconsideration. This remedy is only available in extraordinary circumstances. *Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 863-64 (1988). Here, the following extraordinary circumstances justify reconsideration of the Court's May 9, 2007 Order: (1) Petitioner's prolonged detention without any judicial review; (2) the facts revealed in

the Abraham Declaration; and (3) the Supreme Court's reconsideration of its April 2,

2007 order denying certiorari in *Boumediene*.

This Court's dismissal of Petitioner's petition for habeas corpus meets the

extraordinary circumstances threshold, as "imprisonment" constitutes an "extraordinary"

fact. *Ackermann v. United States*, 340 U.S. 193 (1950) (finding that *imprisonment, lack*

*of counsel, or deprivation of trial* were "extraordinary" facts) (emphasis added);

*Klapprott* v. *United States*, 335 U.S. 601, 614-615 (1949) (holding that continued

imprisonment without an opportunity to defend oneself, after a proceeding on inadequate

facts must be reconsidered because "[f]air hearings are in accord with elemental concepts

of justice, and the language of the 'other reason' clause of 60 (b) is broad enough to

authorize the Court to set aside the default judgment") (internal citations omitted).

Petitioner Al Hawary has now been detained by Respondent at Guantanamo Bay

for more than five years, without any independent judicial review of the legality of his

detention nor of the factual allegations that Respondent asserts justify Petitioner's

indefinite imprisonment without trial. Petitioner's detention under these circumstances is

itself extraordinary.

The situation is rendered even more extraordinary by Lieutenant Colonel

Abraham's recent disclosure of the staggering inadequacies of the Combat Status Review

Tribunal regime, which Respondents have alleged provides a legitimate review process

justifying indefinite detention. *See* Abraham Declaration, attached as Exhibit D. Finally,

the Supreme Court's recent reversal of its previous denial of certiorari in *Boumediene* is

extraordinary. When considered together, Petitioner's prolonged detention, the Abraham

Declaration, and the Supreme Court's recent grant of certiorari in *Boumediene* clearly

constitute the type of extraordinary circumstances that justify relief from operation of the

Court's May 9, 2007 Order. The Court should therefore reconsider that Order, deny

Respondent's Motion to Dismiss and grant Petitioner's Motion to Stay and Hold

Proceedings in Abeyance.

## II.    THIS COURT HAS THE AUTHORITY TO DENY RESPONDENTS' MOTION TO DISMISS AND GRANT PETITIONER'S MOTION TO STAY AND HOLD PROCEEDINGS IN ABEYANCE.

In *Al Ginco v. Bush*, D.C. Cir. No. 06-5191 (June 7, 2007), the CADC denied the

government's motion to dismiss habeas corpus petitions. In doing so, the *Al Ginco* court

explained that:

> [t]he district court may consider in the first instance
> respondents' motion to dismiss and petitioner's motion to
> stay and hold in abeyance, which are currently pending
> before the district court in the actions underlying these
> consolidated appeals.

The Order entered in *Al Ginco* makes clear that this Court retains jurisdiction over this

case and that this Court is not required to dismiss this case and may grant Petitioner's

stay and abey motion.

In the vast majority of habeas petitions pending before the District Court for the

District of Columbia, courts have chosen to deny the government's motion to dismiss and

to hold the cases in abeyance via administrative closure, *see e.g.*, *Zadran et al.* v. *Bush et*

*al.*, 05-cv-2367 (June, 29 2007) (D.C.C. 2007) (J. Roberts), or to hold the government's

motion in abeyance and thus maintain already existing stays or administrative closures.

*See, e.g.*, *Mohammon, et al. v. Bush*, 04-cv-01164 (Jan. 31, 2007) (D.C.C. 2007) (J.

Walton). This Court has the authority to do likewise.

The pending *Boumediene* case is dispositive on the question of this Court's jurisdiction over Petitioner's petition for habeas corpus. The Supreme Court's rare decision to reverse itself and grant certiorari in *Boumediene* is an extraordinary measure that indicates just how subject the current law is to change. This Court is faced with novel and currently-undecided issues of law and Petitioner therefore requests that this Court reconsider its May 9, 2007 Order.

**III.    THIS COURT HAS RECONSIDERED DISMISSAL ORDERS, AND INSTEAD OPTED TO STAY AND HOLD PROCEEDINGS IN ABEYANCE, UNDER NEARLY IDENTICAL CIRCUMSTANCES.**

This Court has reconsidered dismissal orders, and instead opted to stay and hold proceedings in abeyance, in at least two cases similar to this one. *See* Order, *Al Shimrani v. Bush*, attached as Exhibit B; Order, *Saib v. Bush*, attached as Exhibit C. Those orders were based primarily on the Supreme Court's grant of certiorari and the CADC's recall of the mandate in *Boumediene*. The reconsideration orders' reasoning extends with equal force to this case.

**CONCLUSION**

Petitioner respectfully requests that this Court reconsider its dismissal of his petition for habeas corpus and denial of his motion to stay and abey in accordance with Rule 60(b)(6).

Dated: September 13, 2007.

Respectfully submitted,

_Anne J. Castle_

Anne J. Castle
Scott S. Barker
J. Triplett Mackintosh
William Murane
Danielle R. Voorhees
HOLLAND & HART LLP
555 Seventeenth Street, Ste. 3200
Denver, CO 80202
Telephone: (303) 295-8000
Facsimile: (303) 295-8261

Of Counsel:

Shayana Kadidal
CENTER FOR CONSTITUTIONAL RIGHTS
666 Broadway, 7th Floor
New York, NY 10012
Telephone: (212) 614-6438
Facsimile: (212) 614-6499

## CERTIFICATE OF SERVICE

I certify that on September 13, 2007, I electronically filed the foregoing with the Clerk of the Court using the ECF system, which will send notification of such filing to the following:

> U.S. Department of Justice
> Civil Division, Federal Programs Branch
> 20 Massachusetts Ave., NW, Room 7144
> Washington, DC 20530

Holland & Hart LLP

3754238_2

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| **ABBAR SUFIAN AL HAWARY,** ) | |
| ) | |
| **Petitioner,** ) | |
| ) | |
| v. ) | **Civil Action No. 05-1505  (RMC)** |
| ) | |
| **GEORGE W. BUSH,** *et al.*, ) | |
| ) | |
| **Respondents.** ) | |

## MEMORANDUM OPINION AND ORDER

Petitioner Abbar Sufian Al Hawary, a detainee at the United States Naval Station

in Guantanamo Bay, Cuba, filed a petition for a writ of habeas corpus on July 28, 2005.  Now

before the Court are (1) Respondents' Motion to Dismiss and (2) Petitioner's Opposition, Motion

to Stay and Hold Proceedings in Abeyance, and Notice of Intent to File a Petition Under the

Detainee Treatment Act.  Upon consideration of the pleadings and the case law, *see  Boumediene*

*v. Bush*, 476 F.3d 981 (D.C. Cir. 2007); *Kiyemba v. Bush*, No. 05-5487, 2007 WL 964612 (D.C.

Cir. Mar. 22, 2007); *Zalita v. Bush*, No. 07-5129 (D.C. Cir. Apr. 25, 2007) (*per curiam*), it is

hereby

**ORDERED** that Respondents' Motion to Dismiss [Dkt. #50] is **GRANTED**; and

it is

**FURTHER ORDERED** that Petitioner's Motion to Stay and Hold Proceedings

in Abeyance [Dkt. # 51] is **DENIED**; and it is

**Exhibit A**

**FURTHER ORDERED** that this case is **DISMISSED** for lack of subject matter jurisdiction, and all other pending motions are hereby **DENIED** as moot; accordingly, this case is closed.

**SO ORDERED.**

_____/s/_____
ROSEMARY M. COLLYER
United States District Judge

DATE: May 9, 2007

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **MOHAMMED ABDUL RAHMAN AL SHIMRANI**, *et al.*,<br><br>**Petitioners,**<br><br>v.<br><br>**GEORGE WALKER BUSH**, *et al.*,<br><br>**Respondents.** | )<br>)<br>)<br>)<br>)<br>)<br>)    **Civil Action No. 05-2249 (RMC)**<br>)<br>)<br>)<br>)<br>) |

## ORDER

This matter comes before the Court on Petitioners' Motion for Reconsideration of Order Dismissing Petition for Habeas Corpus and Denying Motion to Stay Proceedings and Hold in Abeyance. *See* May 9, 2007 Order [Dkt. #48]. In *Boumediene v. Bush*, 476 F.3d 981 (D.C. Cir. 2007), the D.C. Circuit ruled that the Military Commissions Act of 2006 (MCA), Pub. L. No. 109-366, 120 Stat. 2600 (2006), eliminated jurisdiction of the federal courts to consider habeas actions by Guantanamo detainees, and that the Guantanamo detainees, as aliens outside the sovereign territory of the United States, lack constitutional rights and therefore lack standing to challenge the elimination of jurisdiction. The mandate issued on June 27, 2007 pursuant to Federal Rule of Appellate Procedure 41(b). The Supreme Court granted certiorari on June 29, 2007 in *Boumediene v. Bush*, 476 F.3d 981 (D.C. Cir. 2007) pursuant to Supreme Court Rule 44.2 and vacated its April 2, 2007 Order denying certiorari. On July 26, 2007, the Court of Appeals ordered that "the mandate be recalled" and that "[t]he Clerk of the United States District Court for the District of Columbia is directed to return forthwith to the United States Court of Appeals for the District of Columbia Circuit the mandate issued June 27, 2007." *Boumediene v. Bush*, D.C. Cir. Nos. 05-5062; *Al Odah v. United*

**Exhibit B**

*States*, D.C. Cir. No. 05-5064. In light of these recent events, the Court will grant the Petitioners' motion for reconsideration and will stay and hold this case in abeyance pending the Supreme Court's decision in *Boumediene*. Accordingly, it is hereby

**ORDERED** that Petitioner's Motion for Reconsideration of Order Dismissing Petition for Habeas Corpus and Denying Motion to Stay Proceedings and Hold in Abeyance [Dkt. #53] is **GRANTED**; and it is

**FURTHER ORDERED** that this case is stayed pending the Supreme Court's decision in *Boumediene v. Bush*.

**SO ORDERED.**

_____/s/_____
ROSEMARY M. COLLYER
United States District Judge

DATE: August 22, 2007

2

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MOTAI SAIB, *et al.*,      ) | |
|      ) | |
| Petitioners,      ) | |
|      ) | |
| v.      ) | Civil Action No. 05-1353 (RMC) |
|      ) | |
| GEORGE WALKER BUSH, *et al.*,      ) | |
|      ) | |
| Respondents.      ) | |

### ORDER

This matter comes before the Court on Petitioners' Motion for Reconsideration of Order Dismissing Petition for Habeas Corpus and Denying Motion to Stay Proceedings and Hold in Abeyance. *See* May 9, 2007 Order [Dkt. #59]. In *Boumediene v. Bush*, 476 F.3d 981 (D.C. Cir. 2007), the D.C. Circuit ruled that the Military Commissions Act of 2006 (MCA), Pub. L. No. 109-366, 120 Stat. 2600 (2006), eliminated jurisdiction of the federal courts to consider habeas actions by Guantanamo detainees, and that the Guantanamo detainees, as aliens outside the sovereign territory of the United States, lack constitutional rights and therefore lack standing to challenge the elimination of jurisdiction. The mandate issued on June 27, 2007 pursuant to Federal Rule of Appellate Procedure 41(b). The Supreme Court granted certiorari on June 29, 2007 in *Boumediene v. Bush*, 476 F.3d 981 (D.C. Cir. 2007) pursuant to Supreme Court Rule 44.2 and vacated its April 2, 2007 Order denying certiorari. On July 26, 2007, the Court of Appeals ordered that "the mandate be recalled" and that "[t]he Clerk of the United States District Court for the District of Columbia is directed to return forthwith to the United States Court of Appeals for the District of Columbia Circuit the mandate issued June 27, 2007." *Boumediene v. Bush*, D.C. Cir. Nos. 05-5062; *Al Odah v. United*

**Exhibit C**

*States*, D.C. Cir. No. 05-5064. In light of these recent events, the Court will grant the Petitioners'

motion for reconsideration and will stay and hold this case in abeyance pending the Supreme Court's

decision in *Boumediene*. Accordingly, it is hereby

     **ORDERED** that Petitioners' Motion for Reconsideration of Order Dismissing

Petition for Habeas Corpus and Denying Motion to Stay Proceedings and Hold in Abeyance [Dkt.

#67] is **GRANTED**; and it is

     **FURTHER ORDERED** that this case is stayed pending the Supreme Court's

decision in *Boumediene v. Bush*.

     **SO ORDERED.**


                             _____/s/_____
                             ROSEMARY M. COLLYER
                             United States District Judge

DATE: September 7, 2007

(

## DECLARATION OF STEPHEN ABRAHAM

### Lieutenant Colonel, United States Army Reserve

I, Stephen Abraham, hereby declare as follows:

1.      I am a lieutenant colonel in the United States Army Reserve, having been commissioned in 1981 as an officer in Intelligence Corps. I have served as an intelligence officer from 1982 to the present during periods of both reserve and active duty, including mobilization in 1990 ("Operation Desert Storm") and twice again following 9-11. In my civilian occupation, I am an attorney with the law firm Fink & Abraham LLP in Newport Beach, California.

2.      This declaration responds to certain statements in the Declaration of Rear Admiral (Retired) James M. McGarrah ("McGarrah Dec."), filed in *Bismullah v. Gates*, No. 06-1197 (D.C. Cir.). This declaration is limited to unclassified matters specifically related to the procedures employed by Office for the Administrative Review of the Detention of Enemy Combatants ("OARDEC") and the Combatant Status Review Tribunals ("CSRTs") rather than to any specific information gathered or used in a particular case, except as noted herein. The contents of this declaration are based solely on my personal observations and experiences as a member of OARDEC. Nothing in this declaration is intended to reflect or represent the official opinions of the Department of Defense or the Department of the Army.

3.      From September 11, 2004 to March 9, 2005, I was on active duty and assigned to OARDEC. Rear Admiral McGarrah served as the Director of OARDEC during the entirety of my assignment.

4.      While assigned to OARDEC, in addition to other duties, I worked as an agency liaison, responsible for coordinating with government agencies, including certain Department of Defense ("DoD") and non-DoD organizations, to gather or validate information relating to detainees for

**Exhibit D**

use in CSRTs. I also served as a member of a CSRT, and had the opportunity to observe and participate in the operation of the CSRT process.

5.       As stated in the McGarrah Dec., the information comprising the Government Information and the Government Evidence was not compiled personally by the CSRT Recorder, but by other individuals in OARDEC. The vast majority of the personnel assigned to OARDEC were reserve officers from the different branches of service (Army, Navy, Air Force, Marines) of varying grades and levels of general military experience. Few had any experience or training in the legal or intelligence fields.

6.       The Recorders of the tribunals were typically relatively junior officers with little training or experience in matters relating to the collection, processing, analyzing, and/or dissemination of intelligence material. In no instances known to me did any of the Recorders have any significant personal experience in the field of military intelligence. Similarly, I was unaware of any Recorder having any significant or relevant experience dealing with the agencies providing information to be used as a part of the CSRT process.

7.       The Recorders exercised little control over the process of accumulating information to be presented to the CSRT board members. Rather, the information was typically aggregated by individuals identified as case writers who, in most instances, had the same limited degree of knowledge and experience relating to the intelligence community and intelligence products. The case writers, and not the Recorders, were primarily responsible for accumulating documents, including assembling documents to be used in the drafting of an unclassified summary of the factual basis for the detainee's designation as an enemy combatant.

8.       The information used to prepare the files to be used by the Recorders frequently consisted of finished intelligence products of a generalized nature - often outdated, often "generic," rarely

2

specifically relating to the individual subjects of the CSRTs or to the circumstances related to those individuals' status.

9. Beyond "generic" information, the case writer would frequently rely upon information contained within the Joint Detainee Information Management System ("JDIMS"). The subset of that system available to the case writers was limited in terms of the scope of information, typically excluding information that was characterized as highly sensitive law enforcement information, highly classified information, or information not voluntarily released by the originating agency. In that regard, JDIMS did not constitute a complete repository, although this limitation was frequently not understood by individuals with access to or who relied upon the system as a source of information. Other databases available to the case writer were similarly deficient. The case writers and Recorders did not have access to numerous information sources generally available within the intelligence community.

10. As one of only a few intelligence-trained and suitably cleared officers, I served as a liaison while assigned to OARDEC, acting as a go-between for OARDEC and various intelligence organizations. In that capacity, I was tasked to review and/or obtain information relating to individual subjects of the CSRTs. More specifically, I was asked to confirm and represent in a statement to be relied upon by the CSRT board members that the organizations did not possess "exculpatory information" relating to the subject of the CSRT.

11. During my trips to the participating organizations, I was allowed only limited access to information, typically prescreened and filtered. I was not permitted to see any information other than that specifically prepared in advance of my visit. I was not permitted to request that further searches be performed. I was given no assurances that the information provided for my examination represented a complete compilation of information or that any summary of

3

information constituted an accurate distillation of the body of available information relating to the subject.

12.    I was specifically told on a number of occasions that the information provided to me was all that I would be shown, but I was never told that the information that was provided constituted all available information. On those occasions when I asked that a representative of the organization provide a written statement that there was no exculpatory evidence, the requests were summarily denied.

13.    At one point, following a review of information, I asked the Office of General Counsel of the intelligence organization that I was visiting for a statement that no exculpatory information had been withheld. I explained that I was tasked to review all available materials and to reach a conclusion regarding the non-existence of exculpatory information, and that I could not do so without knowing that I had seen all information.

14.    The request was denied, coupled with a refusal even to acknowledge whether there existed additional information that I was not permitted to review. In short, based upon the selective review that I was permitted, I was left to "infer" from the absence of exculpatory information in the materials I was allowed to review that no such information existed in materials I was not allowed to review.

15.    Following that exchange, I communicated to Rear Admiral McGarrah and the OARDEC Deputy Director the fundamental limitations imposed upon my review of the organization's files and my inability to state conclusively that no exculpatory information existed relating to the CSRT subjects. It was not possible for me to certify or validate the non-existence of exculpatory evidence as related to any individual undergoing the CSRT process.

4

16.     The content of intelligence products, including databases, made available to case writers, Recorders, or liaison officers, was often left entirely to the discretion of the organizations providing the information. What information was not included in the bodies of intelligence products was typically unknown to the case writers and Recorders, as was the basis for limiting the information. In other words, the person preparing materials for use by the CSRT board members did not know whether they had examined all available information or even why they possessed some pieces of information but not others.

17.     Although OARDEC personnel often received large amounts of information, they often had no context for determining whether the information was relevant or probative and no basis for determining what additional information would be necessary to establish a basis for determining the reasonableness of any matter to be offered to the CSRT board members. Often, information that was gathered was discarded by the case writer or the Recorder because it was considered to be ambiguous, confusing, or poorly written. Such a determination was frequently the result of the case writer or Recorder's lack of training or experience with the types of information provided. In my observation, the case writer or Recorder, without proper experience or a basis for giving context to information, often rejected some information arbitrarily while accepting other information without any articulable rationale.

18.     The case writer's summaries were reviewed for quality assurance, a process that principally focused on format and grammar. The quality assurance review would not ordinarily check the accuracy of the information underlying the case writer's unclassified summary for the reason that the quality assurance reviewer typically had little more experience than the case writer and, again, no relevant or meaningful intelligence or legal experience, and therefore had no skills by which to critically assess the substantive portions of the summaries.

5

19.     Following the quality assurance process, the unclassified summary and the information assembled by the case writer in support of the summary would then be forwarded to the Recorder. It was very rare that a Recorder or a personal representative would seek additional information beyond that information provided by the case writer.

20.     It was not apparent to me how assignments to CSRT panels were made, nor was I personally involved in that process. Nevertheless, I discerned the determinations of who would be assigned to any particular position, whether as a member of a CSRT or to some other position, to be largely the product of ad hoc decisions by a relatively small group of individuals. All CSRT panel members were assigned to OARDEC and reported ultimately to Rear Admiral McGarrah. It was well known by the officers in OARDEC that any time a CSRT panel determined that a detainee was not properly classified as an enemy combatant, the panel members would have to explain their finding to the OARDEC Deputy Director. There would be intensive scrutiny of the finding by Rear Admiral McGarrah who would, in turn, have to explain the finding to his superiors, including the Under Secretary of the Navy.

21.     On one occasion, I was assigned to a CSRT panel with two other officers, an Air Force colonel and an Air Force major, the latter understood by me to be a judge advocate. We reviewed evidence presented to us regarding the recommended status of a detainee. All of us found the information presented to lack substance.

22.     What were purported to be specific statements of fact lacked even the most fundamental earmarks of objectively credible evidence. Statements allegedly made by percipient witnesses lacked detail. Reports presented generalized statements in indirect and passive forms without stating the source of the information or providing a basis for establishing the reliability or the credibility of the source. Statements of interrogators presented to the panel offered inferences

from which we were expected to draw conclusions favoring a finding of "enemy combatant" but that, upon even limited questioning from the panel, yielded the response from the Recorder, "We'll have to get back to you." The personal representative did not participate in any meaningful way.

23.     On the basis of the paucity and weakness of the information provided both during and after the CSRT hearing, we determined that there was no factual basis for concluding that the individual should be classified as an enemy combatant. Rear Admiral McGarrah and the Deputy Director immediately questioned the validity of our findings. They directed us to write out the specific questions that we had raised concerning the evidence to allow the Recorder an opportunity to provide further responses. We were then ordered to reopen the hearing to allow the Recorder to present further argument as to why the detainee should be classified as an enemy combatant. Ultimately, in the absence of any substantive response to the questions and no basis for concluding that additional information would be forthcoming, we did not change our determination that the detainee was not properly classified as an enemy combatant. OARDEC's response to the outcome was consistent with the few other instances in which a finding of "Not an Enemy Combatant" (NEC) had been reached by CSRT boards. In each of the meetings that I attended with OARDEC leadership following a finding of NEC, the focus of inquiry on the part of the leadership was "what went wrong."

24.     I was not assigned to another CSRT panel.

I hereby declare under the penalties of perjury based on my personal knowledge that the foregoing is true and accurate.

Dated: June 15, 2007

_____
Stephen Abraham

7

(ORDER LIST: 551 U.S.)

FRIDAY, JUNE 29, 2007

APPEAL -- SUMMARY DISPOSITION

06-589        CHRISTIAN CIVIC LEAGUE OF MAINE V. FEC, ET AL.

            The judgment is vacated and the case is remanded to the

United States District Court for the District of Columbia for

further consideration in light of *Federal Election Commission*

*v. Wisconsin Right to Life, Inc.*, 551 U.S. ___ (2007).

CERTIORARI -- SUMMARY DISPOSITIONS

06-582        UNIVERSITY OF NOTRE DAME V. LASKOWSKI, JOAN, ET AL.

            The petition for a writ of certiorari is granted.  The

judgment is vacated and the case is remanded to the United

States Court of Appeals for the Seventh Circuit for further

consideration in light of Hein v. Freedom From Religion

Foundation, Inc., 551 U.S. ____ (2007).

CERTIORARI GRANTED

06-1195 )     BOUMEDIENE, LAKHDAR, ET AL. V. BUSH PRESIDENT OF U.S., ET AL.
        )
06-1196 )     AL ODAH, KHALED A. F., ET AL. V UNITED STATES, ET AL.

            The petitions for rehearing are granted.  The orders entered

April 2, 2007, denying the petitions for writs of certiorari are

vacated.  The petitions for writs of certiorari are granted. The cases

are consolidated and a total of one hour is allotted for oral argument.

As it would be of material assistance to consult any decision in

*Bismullah, et al., v. Gates*, No. 06-1197, and *Parhat, et al., v. Gates*,

No. 06-1397, currently pending in the United States Court of Appeals for

1

**Exhibit E**

the District of Columbia Circuit, supplemental briefing will be
scheduled upon the issuance of any decision in those cases.

### CERTIORARI DENIED

| | |
|---|---|
| 05-1257 | LISTER, TONY M. V. UNITED STATES |
| 05-1379 | BOSCARINO, NICK S. V. UNITED STATES |
| 05-8615 | RODRIGUEZ-ALVAREZ, CARLOS V. UNITED STATES |
| 05-8654 | WESLEY, JAMIE V. UNITED STATES |
| 05-8865 | CASTENADA-ROJAS, ERASMO V. UNITED STATES |
| 05-9410 | SKAGGS, DAMON W. V. UNITED STATES |
| 05-10381 | VASQUEZ, PATRICK A. V. UNITED STATES |
| 05-10397 | NGO, TEK V. UNITED STATES |
| 05-10431 | ARTIS, ANDREE V. UNITED STATES |
| 05-11310 | HERNANDEZ-RODRIGUEZ, MARIO V. UNITED STATES |
| 05-11336 | HEINTZELMAN, TROY V. UNITED STATES |
| 05-11395 | ANDRLIK, MICHAEL A. V. UNITED STATES |
| 05-11582 | LEWIS, TROYCE A. V. UNITED STATES |
| 05-11751 | GILES, TRAVIS V. UNITED STATES |
| 05-11764 | MARES, MARTHA C. V. UNITED STATES |
| 05-11770 | BOYD, GILBERT E. V. UNITED STATES |
| 06-111 | ELLIS, WILLIAM A. V. UNITED STATES |
| 06-757 | MARINEAU, SETH, ET AL. V. GUILES, ZACHARY |
| 06-1157 | GALE, ALGIS J. V. UNITED STATES |
| 06-1375 | OKORO, CHIJIOKE V. V. UNITED STATES |
| 06-1420 | MILLER, LARRY K. V. UNITED STATES |
| 06-5015 | JACKSON, MARK M. V. UNITED STATES |
| 06-5152 | WILLIAMS, HERBERT V. UNITED STATES |
| 06-5166 | ALLEN, MICHAEL W. V. UNITED STATES |